UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STACY CHIAPPETTA, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) KELLOGG SALES COMPANY ) ) Defendant. ) | No. 21-CV-3545 Hon. Marvin E. Aspen |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

This putative class action concerns the alleged misleading labeling of toaster pastries. Plaintiff Stacy Chiappetta claims that the packaging for Defendant Kellogg Sales Company's ("Kellogg") Unfrosted Strawberry Pop-Tarts (the "Product") is misleading because it "give[s] consumers the impression the fruit filling contains only strawberries and/or more strawberries than it does." (Complaint ("Compl.") (Dkt. No. 1) ¶ 2.)[1] Chiappetta brings claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*; negligent misrepresentation; breaches of express warranty, implied warranty of merchantability, and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; fraud; and unjust enrichment. (*Id.* ¶¶ 74–100.) Chiappetta asserts that we have jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). (*Id.* ¶ 45.)[2]

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] The CAFA gives federal courts jurisdiction over class actions in which there is at least $5,000,000 in controversy, minimal diversity exists between the parties, and the total number of class members is greater than 100. *See* 28 U.S.C. § 1332(d). Chiappetta alleges that she is a

Kellogg has moved to dismiss Chiappetta's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Motion to Dismiss Plaintiff's Class Action Complaint ("Motion") (Dkt. No. 10) at 1.) Kellogg has also moved to dismiss Chiappetta's request for injunctive under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. (*Id.*) For the reasons set forth below, we grant Kellogg's Motion.

## BACKGROUND

We have taken the following facts from the Complaint and deem them to be true for the purposes of this Motion. *See Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Chiappetta purchased the Product "on one or more occasions . . . at stores including but not necessarily limited to" a Jewel Osco store in Chicago Heights, Illinois, "in or around March 2021." (Compl. ¶ 58.) The Product was "sold at a premium price, approximately no less than $5.49 for 12 Pop-Tarts (20.3 OZ), excluding tax." (*Id*. ¶ 44.)

A front view of the Product's packaging is found below:

---

citizen of Illinois and that Kellogg is a Delaware corporation with its principal place of business in Michigan, which satisfies the minimum diversity requirement. (*See* Compl. ¶¶ 46, 47.) Chiappetta defines the class as "all purchasers of the Product who reside in Illinois during the applicable statutes of limitations." (*Id*. ¶ 65.) It is reasonable to infer that this class includes more than 100 people based on the alleged sale price of the Product ($5.49 for 12 Pop-Tarts) and Kellogg's alleged annual sales of the Product within Illinois (more than $5 million). (*See id*. ¶¶ 44, 49.) Chiappetta does not explain how Kellogg's sales translate to damages, alleging only that she paid more for the Product than it was worth. (*See id*. ¶ 63.) However, she is not required to identify the premium that she and others paid at this stage. *See Tropp v. Prairie Farms Dairy, Inc.*, 20-cv-1035-jdp, 2021 WL 5416639, at *2 (W.D. Wis. Nov. 19, 2021). And Kellogg has not contested that there is at least $5,000,000 in controversy. (*See generally* Memorandum of Law in Support of Kellogg Sales Company's Motion to Dismiss Plaintiff's Class Action Complaint ("Memo") (Dkt. No. 11); Reply in Support of Kellogg Sales Company's Motion to Dismiss Plaintiff's Class Action Complaint ("Reply") (Dkt. No. 15).) Therefore, we conclude for the purposes of this Motion that Chiappetta has properly alleged our subject matter jurisdiction. *See Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *2 n.6 (N.D. Ill. Mar. 15, 2016).



(*Id.* ¶ 1.) Chiappetta claims that the Product packaging misled her and other consumers into believing that the Product's fruit filling contained "only strawberries and/or more strawberries than it does" because it bears the word "Strawberry," and it depicts half of a fresh strawberry and red fruit filling. (*Id.* ¶ 2.) In reality, though, the Product's fruit filling contains more than just strawberries; it also contains dried pears, dried apples, and a food dye known as "red 40," among other ingredients. (*Id.* ¶ 26.)

Strawberries confer certain health benefits. (*Id.* ¶¶ 11–17.) For example, they are an "excellent source of vitamin C," and they have "uniquely high levels of antioxidants known as polyphenols." (*Id.* ¶¶ 12, 14 (internal quotation marks and citations omitted).) However, the "Product is unable to confer any of the[se] health-related benefits because it has less strawberries than it purports to" have. (*Id.* ¶ 23.) Additionally, the red 40 food dye used to color the Product's filling "is connected with learning disorders and hyperactivity in children." (*Id.* ¶ 39.)

Chiappetta contends that but for Kellogg's "misrepresentations and omissions," she either would not have bought the Product or would have paid less for it. (*Id.* ¶¶ 62, 63.) She adds that she intends to purchase the Product again "when she can do so with the assurance that [the] Product's labels are consistent with the Product's components." (*Id.* ¶ 64.) Chiappetta brings

3

this putative class action on behalf of herself and "all purchasers of the Product who reside in Illinois during the applicable statutes of limitations." (*Id*. ¶ 65.)

## LEGAL STANDARD

### I. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint, but not the merits of a case. *McReynolds v. Merrill Lynch & Co*., 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such motions, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo*, 526 F.3d at 1081. A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that a defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964.

Claims sounding in fraud, including a claim alleging deceptive practices in violation of the ICFA, must also meet the heightened pleading standard of Federal Rule of Civil Procedure

4

9(b). *See* Fed. R. Civ. P. 9(b); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019); *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). In practice, this means that a plaintiff "must identify the 'who, what, when, where, and how' of the alleged fraud." *Benson*, 944 F.3d at 646 (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019)).

## II. Rule 12(b)(1) Motion to Dismiss

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). If a court does not have subject matter jurisdiction over a claim, the claim must be dismissed. *See In re Chicago, Rock Island & Pac. R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). Where, as here, there is a facial challenge to the court's subject matter jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the matter. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

## ANALYSIS

### I. ICFA

The ICFA safeguards "consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (internal citation and quotation marks omitted). "In order to state a claim under the ICFA, a plaintiff must show: '(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)).

"Although ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013)).

Chiappetta challenges a "deceptive," rather than "unfair," practice. (*See, e.g.,* Compl. ¶ 61; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint ("Opposition") (Dkt. No. 14) at 9–16 (explaining why she has plausibly alleged a "deceptive act or practice" under the ICFA).) Therefore, we apply the standard for deceptive practices to Chiappetta's ICFA claim. "A practice is deceptive 'if it creates a likelihood of deception or has the capacity to deceive.'" *Benson*, 944 F.3d at 646 (quoting *Bober*, 246 F.3d at 938). "To determine the likelihood of deception, courts apply a 'reasonable consumer' standard." *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 704–05 (N.D. Ill. 2020). This standard "requires more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal citations and quotation marks omitted); *Geske*, 503 F. Supp. 3d at 705 (quoting *Ebner*).

Courts considering "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020). "What matters most is how real consumers understand and react to the advertising." *Id.* at 476. "[W]here

6

plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id*. at 477.

According to Kellogg, Chiappetta has not plausibly pled that the front of the Product's packaging is deceptive. (Memo at 9–15.) In particular, Kellogg argues that its Product packaging "does not represent that Strawberry Pop-Tarts contain no fruits other than strawberries, that the filling contains a specific amount of strawberries, or that the filling includes only a *de minimis* amount of other fruits." (*Id*. at 10.) Additionally, Kellogg continues, the use of red 40 is not misleading—if anything, it suggests that the Product contains something other than strawberries because it is an unnatural color. (*Id*. at 14–15.) Kellogg further contends that courts have made clear that a product's color does not convey to a reasonable consumer that the product contains certain ingredients. (*Id*.)

In response, Chiappetta argues that courts should not dismiss deceptive labeling claims unless they are unreasonable or fanciful, and her interpretation of the Product's packaging is neither unreasonable nor fanciful. (Opposition at 10–11.) Further, Chiappetta contends that the term "Strawberry" is sufficiently specific in that a reasonable consumer could understand its use to suggest that the Product's fruit filling contains only strawberries or a greater amount of strawberry than non-strawberry ingredients. (*Id*. at 12–13.)

The essence of Chiappetta's ICFA claim is that the word "Strawberry," combined with a picture of half of a strawberry and a Pop-Tart oozing red filling, misleads consumers into believing that the Product's filling consists of "only strawberries and/or more strawberries than it does" have. (Compl. ¶ 2.) However, no reasonable consumer could conclude that the filling contains a certain amount of strawberries based on the package's images and its use of the term "Strawberry." *See, e.g.*, *Wallace v. Wise Foods, Inc.*, 20-CV-6831 (JPO), 2021 WL 3163599, at

7

*2 (S.D.N.Y. July 26, 2021) (dismissing deceptive advertising claims where no reasonable consumer could believe that because chips were labeled "Cheddar & Sour Cream Flavored," the chips' flavor was derived entirely from cheddar and sour cream); *Solak v. Hain Celestial Grp., Inc.*, 3:17-CV-0704 (LEK/DEP), 2018 WL 1870474, at *4 (N.D.N.Y. Apr. 17, 2018) (not misleading to refer to product as "Garden Veggie Straws" where it contained vegetable-based ingredients and made "no claim as to the amount or proportion of 'Veggie' products" that it contained).

    This case is substantially similar to *Floyd v. Pepperidge Farm, Inc.*, Case No. 21-cv-525-SPM, 2022 WL 203071 (S.D. Ill. Jan. 24, 2022). In that case, the plaintiff claimed that the packaging for Pepperidge Farm's "Golden Butter" crackers was misleading because "even though the [crackers] contain butter," they also contained a "non-de minimis amount of butter substitutes – vegetable oils." *Id*. at *1 (internal quotation marks and citation omitted). The plaintiff claimed that "she wanted to consume a cracker which contained more butter than it did and did not contain butter substitutes where butter could be used." *Id*. (internal quotation marks and citation omitted). The court dismissed the plaintiff's ICFA claims, reasoning that there were no "untruths on the packaging" or deception because the crackers were golden-colored and contained butter. *Id*. at *4.

    Here, like the plaintiff in *Floyd*, Chiappetta has not identified any "untruths on the packaging" or a plausible deception. The front of the Product packaging does not state or suggest anything about the amount of strawberries in the Product's filling or guarantee that the filling contains only strawberries, and Chiappetta concedes that the filling contains some strawberries. (*See, e.g.,* Compl. ¶¶ 1, 2, 26.) Accordingly, Chiappetta's interpretation of the label is unreasonable and unactionable. *See Bober*, 246 F.3d at 939 (affirming the dismissal of

deceptive advertising claims where statements could not be reasonably understood in the manner that plaintiff alleged). Because Chiappetta has not stated a plausible claim to relief under ICFA, her ICFA claim is dismissed.

## II. Breach of Warranties

### A. Breach of Express Warranty and Implied Warranty of Merchantability

Chiappetta brings claims for breach of express warranty and the implied warranty of merchantability. (Compl. ¶¶ 87–94.) In support of these claims, Chiappetta alleges that "[t]he Product was manufactured, labeled and sold by [Kellogg] or at [Kellogg's] express directions and instructions, and warranted to [Chiappetta] and class members that [the Product] possessed substantive, quality, compositional, nutritional, sensory, and/or organoleptic attributes which [it] did not." (*Id*. ¶ 88.) Additionally, she alleges that the Product was not merchantable because it "did not conform to its affirmations of fact and promises." (*Id*. ¶ 93.)

Both parties agree that Illinois law applies to Chiappetta's common law claims for breach of express warranty and the implied warranty of merchantability. (*See* Memo at 16–17; Opposition at 16–18.) Under Illinois law, a properly pled claim for breach of express warranty alleges that the defendant: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). In general, "a plaintiff must state the terms of the warranty alleged to be breached or attach it to the complaint." *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *7 (N.D. Ill. June 16, 2015) (internal quotation marks and citation omitted).

"To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that '(1) the defendant sold goods that were not merchantable at the time of sale; (2) the

9

plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect.'" *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 741 (N.D. Ill. 2015) (quoting *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999)). To be merchantable, goods must, among other things, "pass without objection in the trade under the contract description" and "conform to the promises or affirmations of fact made on the container or label if any." 810 ILCS 5/2-314(2).

Buyers seeking to sue for breach of express or implied warranties must first notify the seller of its breach. *Ibarrola*, 83 F. Supp. 3d at 760 (express warranty); *Baldwin*, 78 F. Supp. 3d at 741–42 (implied warranty). A party's failure to comply with the notice requirement may be excused if she alleges that she suffered a physical injury or that the defendant had actual knowledge of the product's defect. *Ibarrola*, 83 F. Supp. 3d at 760.

Kellogg makes a few arguments as to why Chiappetta's allegations do not sufficiently plead breach of warranty claims. First, Kellogg argues that Chiappetta's claims fail because they are predicated on allegedly false advertising, and she has not plausibly alleged that Kellogg's advertising would likely deceive a reasonable consumer. (Memo at 15–16.) Second, Kellogg contends that Chiappetta's claims fail for lack of privity because Chiappetta alleges that she purchased the Product from stores, such as Jewel Osco, rather than from Kellogg directly. (*Id*. at 16.) Third, Kellogg argues that Chiappetta's claims must be dismissed because she failed to provide pre-suit notice. (*Id*. at 16–17.)

Chiappetta takes the opposite view, first arguing that she has plausibly alleged that a reasonable consumer would be deceived by Kellogg's advertising. (Opposition at 16–17.) Second, Chiappetta contends that privity is a fact-intensive issue that is more properly resolved at a later stage in the litigation; and in any event, her claims qualify for the "direct-dealing"

10

exception to the privity requirement. (*Id*. at 17.) Third, Chiappetta claims that she gave Kellogg notice of the Product's defect by filing this suit, and Kellogg admitted knowledge of the defect by not contesting the defect in its opening brief. (*Id*. at 17–18.)

We agree with Kellogg that Chiappetta's claims for breach of express and implied warranties suffer from the same infirmity as Chiappetta's ICFA claim: Kellogg never made the representation that Chiappetta claims it made. As discussed above, the word "Strawberry," combined with a picture of half of a strawberry and a Pop-Tart oozing red filling, does not guarantee that there will be a certain amount of strawberries in the Product's filling. Chiappetta purchased Strawberry Pop-Tarts that did, in fact, contain strawberries. (*See* Compl. ¶¶ 26, 58.) The Product comported with its packaging. This is fatal to Chiappetta's claims for breach of express and implied warranties. *See Spector v. Mondelēz*, 178 F. Supp. 3d 657, 674 (N.D. Ill. 2016) (dismissing a claim for breach of express warranty where plaintiff had not pled sufficient facts to show that defendant had warranted what plaintiff claimed it did); *Floyd*, 2022 WL 203071, at *5 (dismissing plaintiff's claim for breach of implied warranty of merchantability where the label did not warrant what plaintiff claimed it did, and plaintiff purchased what was promised).

Chiappetta's claims for breach of express and implied warranties fail for the additional reason that Chiappetta did not meet her pre-suit notice obligation. (*See* Compl. ¶ 91.) Contrary to Chiappetta's contention, she cannot satisfy the pre-suit notice obligation by filing suit. *See Rudy v. Family Dollar Stores*, No. 21-cv-3575, 2022 WL 345081, at *7 (N.D. Ill. Feb. 4, 2022) ("The notice requirement is intended to encourage pre-suit settlement negotiations. That purpose would be eviscerated if a party could satisfy the notice requirement by filing suit . . . .") (internal quotation marks and citations omitted). Nor does the allegation that Kellogg received consumer

11

complaints (*see* Compl. ¶ 92) relieve Chiappetta of her duty to notify Kellogg. At most, this allegation suggests that Kellogg has "generalized knowledge" of the alleged defect, which does not suffice under Illinois law. *See Connick*, 174 Ill. 2d at 493–94, 675 N.E.2d at 590; *Rudy*, 2022 WL 345081, at *7 n.4.

We are not persuaded that Kellogg admitted knowledge of the alleged defect by not contesting Chiappetta's claims on the merits either. On a Rule 12(b)(6) motion, we accept all well-pleaded facts as true and do not test the merits of a case. *See McReynolds*, 694 F.3d at 878; *Tamayo*, 526 F.3d at 1081; *Gibson*, 910 F.2d at 1520. Given the standard applicable to Rule 12(b)(6) motions, it would be inappropriate for us to conclude that Kellogg "admitted knowledge of the alleged defect" merely because it abided by the standards applicable to Rule 12(b)(6) motions in its briefing.

Because we conclude that Chiappetta's claims for breach of express and implied warranties fail on multiple grounds, we need not reach Kellogg's privity argument. Chiappetta's claims for breach of express and implied warranties are dismissed.

## B. Magnuson-Moss Warranty Act

Chiappetta also alleges that Kellogg violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. (Compl. ¶ 87–94.) Her Magnuson-Moss Act claim relies on the same allegations as her common-law breach of warranty claims. (*See id.*) Kellogg argues that Chiappetta's Magnuson-Moss Act claim should be dismissed because Magnuson-Moss Act claims depend on the existence of a viable state-law warranty claim, and Chiappetta has none. (Memo at 16 n.6.) Chiappetta disagrees, arguing that we should not dismiss her Magnuson-Moss Act claims because her state-law claims are valid, and Kellogg's argument was raised in a footnote. (Opposition at 18.)

As set forth in the previous section, Chiappetta has not pled viable state-law warranty claims. We therefore dismiss her claim under the Magnuson-Moss Act as well. *See Scheisser v. Ford Motor Co.*, No. 16-730, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016) ("[A] cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim."); *see also Floyd*, 2022 WL 203071, at *5 ("Since Illinois law prevails and this Court has dismissed both the express and implied warranties for failing to properly allege a state law claim, any MMWA counts are dismissed as well.").

Contrary to Chiappetta's contention, we need not disregard Kellogg's argument merely because it was made in a footnote. *See Hills v. AT&T Mobility Servs, LLC*, No. 3:17-CV-556-JD-MGG, 2021 WL 3088629, at *1 (N.D. Ind. July 22, 2021) (considering arguments raised in footnotes where doing so would ensure "a fair and just outcome"). It is within our discretion to consider arguments made in footnotes or to deem them to be waived. *Id.* This is not a case where a party's use of footnotes was so excessive as to make it difficult for us or other parties to follow. *See O'Connor v. Ford Motor Co.*, Case No. 19-cv-5045, 2021 WL 4866353, at *2 n.1 (difficult to follow arguments where opening brief contained 83 footnotes and reply contained 113 footnotes). Therefore, we do not find it improper to consider Kellogg's argument in this instance. In the future, however, both parties should raise substantive arguments in the body of their briefs. *See Leonardo v. Health Care Serv. Corp.*, No. 09 C 1588, 2010 WL 317520, at *4 n.1 (N.D. Ill. Jan. 20, 2010) ("[T]he Court is not opposed to the use of footnotes in principle. However, in the future, the Court encourages the parties to avoid gratuitous misuse of an instrument generally reserved for tangential details."). Accordingly, Chiappetta's Magnuson-Moss Warranty Act claim is also dismissed.

### III. Negligent Misrepresentation

Chiappetta asserts that Kellogg should be liable for negligent misrepresentation because Kellogg "misrepresented the substantive, quality, compositional, nutritional, sensory, and/or organoleptic attributes of the Product" and "knew or should have known" that its marketing of the Product was "false or misleading." (Compl. ¶¶ 81, 82.) Chiappetta claims that had she and other putative class members known the truth, they "would not have purchased the Product or paid as much," and, as a result, they "suffer[ed] damages." (*Id.* ¶ 86.)

Kellogg asserts that Chiappetta's claim is barred by the economic loss doctrine. (Memo at 17–18.) The economic loss doctrine in Illinois—also known as the "*Moorman* doctrine"—was set forth by the Illinois Supreme Court in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 88, 435 N.E.2d 443, 451–52 (1982). This doctrine "'denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations.'" *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1120 (N.D. Ill. 2019) (quoting *Sienna Ct. Condo. Assoc. v. Champion Aluminum Corp.*, 2018 IL 122022, ¶ 21, 129 N.E.3d 1112, 1119 (2018)).

Chiappetta does not dispute that she suffered an economic loss rooted in disappointed contractual or commercial expectations; instead, she argues that her claim satisfies an exception to the economic loss doctrine. (Opposition at 19.) Specifically, a plaintiff who suffers purely economic losses may maintain a claim for negligent misrepresentation against "one who is in the business of supplying information for the guidance of others in their business transactions." *See Moorman*, 91 Ill.2d at 89, 435 N.E.2d at 452. Citing *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 163, 636 N.E.2d 503, 515 (1994), Chiappetta contends that "as one of the largest food manufacturers in the world, and a pioneer of breakfast

14

foods, with special knowledge and experience, [Kellogg] had a non-delegable duty, outside of the contract to provide non-deceptive information, that it breached." (Opposition at 19 (internal quotation marks and citations omitted).) Chiappetta's position is unsupported by the authority she cites, however. *Congregation of the Passion* concerned services offered by skilled professional accountants, 159 Ill. 2d at 142, 636 N.E.2d at 505, and Kellogg is not a learned intermediary (like an accountant) offering professional advice to its customers. Rather, Kellogg "is one of the largest food manufacturers in the world." (Compl. ¶ 54.) *Congregation of the Passion* is inapposite.

The more relevant authority is *Manley*. In that case, the court considered whether a consumer could maintain a claim for negligent misrepresentation against a sunscreen manufacturer where the consumer alleged that she wanted a refund for sunscreen that did not perform as she expected. 417 F. Supp. 3d at 1120. The court concluded that because the consumer sought relief for disappointed commercial expectations, her claim for negligent misrepresentation was barred by the *Moorman* doctrine. *Id*. at 1120–21. The court also rejected the notion that consumer's claim qualified for an exception to that doctrine, observing, among other things, that the sunscreen manufacturer did not become "one who is in the business of supplying information for the guidance of others in their business transactions" by virtue of providing "information ancillary to the sale of a product" only. *Id*. (internal quotation marks and citations omitted).

Kellogg may have provided information to consumers that was ancillary to the sale of the Product, but that does not mean it "is in the business of supplying information for the guidance of others in their business transactions." *Id*.; *see also First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 339, 843 N.E.2d 327, 334–35 (2006) (exception to economic loss

15

doctrine is inapplicable where "the negligent misrepresentation is contained within information which is incidental to a tangible product"). Chiappetta has not pled sufficient facts to sustain her claim for negligent misrepresentation; therefore, that claim is dismissed.

## IV. Fraud

Chiappetta challenges the same conduct in her fraud claim as in her other claims, adding that Kellogg's "fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were neither true nor accurate . . . ." (Compl. ¶¶ 96, 97.) To state a claim for common-law fraud, a plaintiff must plead: "'(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.'" *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick*, 174 Ill. 2d. at 496, 675 N.E.2d at 591). "*Scienter*, knowledge by the defendant that a statement he has made is false, is an essential element of common-law fraud." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 198, 634 N.E.2d 418, 424 (2d Dist. 1994); *see also Tricontinental Indus.*, 475 F.3d at 841 (plaintiff's claim for common-law fraud was properly dismissed where plaintiff did not adequately plead scienter).

Kellogg contends that Chiappetta has not adequately pled scienter. (Memo at 18–19.) In response, Chiappetta that she has satisfied the pleading requirements for fraud set forth in Federal Rule of Civil Procedure 9(b) because she alleged the "who, what, where, when, and how" of Kellogg's alleged fraud and may allege scienter generally. (Opposition at 19–20 (internal citations and quotation marks omitted).)

Chiappetta's allegations in support of scienter are substantially similar to those that we found to be insufficient in *Rudy*. 2022 WL 345081, at *9. In that case, the plaintiff brought a claim for common-law fraud under Illinois law based on the product labeling on snack almonds. *Id*. at *1, *9. She alleged that the defendant's fraudulent intent "is evinced by its knowledge that the Product was not consistent with its representations." *Id.* at *9 (internal quotation marks and citation omitted). We found those allegations to be conclusory and dismissed the plaintiff's common-law fraud claim for failure to plead scienter with particularity as required by Rule 9(b). *Id*. Like the plaintiff in *Rudy*, Chiappetta alleges that Kellogg had fraudulent intent because it misrepresented the characteristics of the Product on the Product's packaging. *Compare* Compl. ¶ 97, *with Rudy*, 2022 WL 345081, at *9. As in *Rudy*, these allegations regarding scienter are conclusory and, therefore, fall short of what Rule 9(b) requires. *See Rudy*, 2022 WL 345081, at *9. Accordingly, we dismiss Chiappetta's common-law fraud claim.

**V.    Unjust Enrichment**

Chiappetta alleges that Kellogg was unjustly enriched when it "obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members . . . ." (Compl. ¶ 100.) "Unjust enrichment is a 'quasi-contract' theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results." *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008). To plead a cause of action for unjust enrichment, a "plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (internal quotation marks and citation omitted); *Prudential Ins.*, 548 F. Supp. 2d at 622. However, if the parties'

relationship is governed by a contract, a plaintiff cannot bring a claim of unjust enrichment unless the claim falls outside of that contract. *Prudential Ins.*, 548 F. Supp. 2d at 622.

Kellogg argues that Chiappetta's claim fails because it is predicated on the same conduct as her consumer fraud claims; because those claims fail, so too, must her claim for unjust enrichment. (Memo at 19.) In response, Chiappetta contends that dismissal of her unjust enrichment claim is premature both because she has stated a valid claim under the ICFA and because she is allowed to plead a claim for unjust enrichment as an alternative to her fraud claims. (Opposition at 20.)

Kellogg has the better argument. Chiappetta's unjust enrichment claim relies on the same allegations as her ICFA and fraud claims. Because Chiappetta has failed to plausibly allege deception (as we discussed with respect to Chiappetta's ICFA claim), her unjust enrichment claim must also fail. *See Bober*, 246 F.3d at 943 (district court properly dismissed a claim for unjust enrichment where plaintiff did not plausibly allege that he had been deceived); *Floyd*, 2022 WL 203071, at *7 (dismissing unjust enrichment claim where plaintiff had not plausibly alleged untruths or a deception); *Ibarrola*, 83 F. Supp. 3d at 760 ("Absent a plausible allegation of deception, the claim for unjust enrichment must fail."). Further, Chiappetta's claim for unjust enrichment cannot stand on its own in light of our dismissal of the rest of her claims. *See Ibarrola*, 83 F. Supp. 3d at 761 ("[A] claim for unjust enrichment cannot stand on its own in light of the Court's dismissal of [plaintiff's] fraud and express warranty claims.") For these reasons, we also dismiss Chiappetta's unjust enrichment claim.

## VI. Injunctive Relief

Chiappetta asks that we enter a preliminary and permanent injunction "directing [Kellogg] to correct the challenged practices to comply with the law." (Compl. at 13.) She

further requests "[i]njunctive relief to remove, correct and/or refrain from the challenged practices and representations . . . ." (*Id*. at 14.)

Kellogg asks that we dismiss Chiappetta's request for injunctive relief under Rule 12(b)(1) for lack of standing. (Memo at 19–20.) According to Kellogg, it is appropriate to dismiss requests for injunctive relief where, as here, a plaintiff is aware of the allegedly deceptive practice and is unlikely to be harmed by it in the future. (*Id*.) Chiappetta responds that her request for injunctive relief should not be dismissed because she has alleged that Kellogg's deceptive practices continue and that she will purchase the Product once she can be sure that the Product packaging accurately represents the amount of strawberries inside the Product. (Opposition at 20–22.)

Kellogg's argument is more persuasive for a couple of reasons. First, Chiappetta has not pled any viable claims, so there are no claims for which Chiappetta can seek injunctive relief as a remedy. *See Bittman v. Fox*, 107 F. Supp. 3d 896, 905 (N.D. Ill. 2015) (dismissing plaintiff's claim for injunctive relief because "an injunction is an equitable remedy, not a separate cause of action"); *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1002 (N.D. Ill. 2011) (same).

Second, even if we had not dismissed Chiappetta's claims, she still does not have standing to pursue injunctive relief against Kellogg. "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) (internal citations omitted); *see also Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) ("[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future

19

violations of their rights. . . .") (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665 (1983)). Here, Chiappetta knows that the Product's filling contains apples and pears in addition to strawberries; therefore, she is unlikely to be harmed by Kellogg's Product packaging in the future. *See Camasta*, 761 F.3d at 740–41; *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1087 (N.D. Ill. 2018) (dismissing plaintiff's claim for injunctive relief where plaintiff was aware that the pita chips at issue were not "All Natural," and thus, was unlikely to be harmed by the alleged deception in the future); *Ulrich v. Probalance, Inc.*, No. 18 C 10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (observing that "[m]ost courts . . . agree . . . that consumer plaintiffs cannot pursue injunctive relief if they are already aware of the alleged deceptive practice" and concluding that plaintiff lacked standing to pursue injunctive relief). Therefore, we dismiss Chiappetta's request for injunctive relief as well.

## CONCLUSION

For the reasons set forth above, we grant Kellogg's Motion to Dismiss in its entirety. Chiappetta has until March 22, 2022, to amend her Complaint if she can do so in accordance with this Opinion and Federal Rule of Civil Procedure 11. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: March 1, 2022